{¶ 25} I must respectfully dissent, because the majority opinion permits a miscarriage of justice to occur.
 {¶ 26} Qasim made a mistake involving himself in an act of domestic violence in his own home. He accepted responsibility for his own ill-advised actions and pled no contest. Following his participation in a domestic violence diversion program to the satisfaction of the trial court, the court dismissed his case because he had proven he could do the right thing!
 {¶ 27} Unfortunately, this salutary outcome is about to become undone by a bureaucracy that threatens to impose a penalty far more severe than could be justified by Qasim's plea of no contest. Qasim is about to be deported based upon the plea he entered and which, in a real sense, was erased by the trial court. These facts do not warrant the outcome that is looming. *Page 9 
 {¶ 28} Qasim's dilemma was foreseen when the Ohio General Assemblymandated that all non-citizens be advised of the potential consequences of a plea. The General Assembly added this additional protection in R.C.2943.031(D) for non-citizens entering a no contest plea in order to notify them of the harsh consequences of their plea. The mandatory nature of this notice must not be treated lightly.
 {¶ 29} As stated by the Seventh Appellate District:
 {¶ 30} "On remand, the municipal court must be aware that, because the language in R.C. 2943.031(D) is mandatory, the court has nodiscretion and must allow appellant to withdraw his plea if the following statutory requirements are met: (1) the advisement was not given, (2) the advisement was required to be given, (3) appellant is not a citizen of the United States, and (4) appellant may be deported, excluded, or denied naturalization as a result of his conviction of domestic violence."[4]
 {¶ 31} In addition, Crim.R. 11(B)(2) provides that a no contest plea "shall not be used against the defendant in any subsequent civil or criminal proceeding."
 {¶ 32} It appears that the trial court treated this matter as a typical Crim.R. 32.1 proceeding when it dismissed Qasim's motion. However, the trial court was not operating pursuant to the correct standard. As stated by the Supreme Court of Ohio:
 {¶ 33} "In most circumstances, motions to withdraw guilty or no-contest pleas are subject to the standards of Crim.R. 32.1, which requires that after sentencing has occurred, a defendant must demonstrate `manifest injustice' before a trial court should *Page 10 
permit withdrawal of the plea. However, an examination of R.C. 2943.031
in its entirety makes apparent the General Assembly's intent to free a noncitizen criminal defendant from the `manifest injustice' requirement of Crim.R. 32.1 and to substitute R.C. 2943.031(D)'s standards in its place. The General Assembly has apparently determined that due to the serious consequences of a criminal conviction on a noncitizen's status in this country, a trial court should give the R.C. 2943.031(A) warning and that failure to do so should not be subject to the manifest-injustice standard even if sentencing has already occurred.
 {¶ 34} "In light of the above, we must agree with those courts that have determined that, through R.C. 2943.031, the General Assembly has created a substantive statutory right for certain criminal defendants and that this right therefore prevails over the general procedural provisions of Crim.R. 32.1."[5]
 {¶ 35} Obviously, the passage of time weighed heavily on the trial court's decision. However, that consideration is of lesser importance in this case. "The statute [R.C. 2943.031] contains no language imposing a time limit on the filing of a motion to withdraw [the plea]."[6]
 {¶ 36} Bearing in mind that the original action was dismissed based upon Qasim's cooperation with the court to resolve this matter and his willingness to take responsibility for his actions, the Supreme Court of Ohio places the reasonableness of *Page 11 
Qasim's motion to withdraw his plea as the paramount consideration in determining whether his plea should be vacated. As stated by that court:
 {¶ 37} "However, at the same time, we also do not accept the court of appeals' determination that, as a matter of law, untimeliness here was a sufficient factor in and of itself to justify the trial court's decision to deny the motion. In light of the strong policy expressed within R.C.2943.031(D), we reject the court of appeals' approach in this regard, particularly when the trial court, which did not explain its ruling, never found that appellant's delay in moving to withdraw the plea was unreasonable. It is too great a leap on this meager record to conclude, with no further inquiry, that appellant's delay in filing the motion was unreasonable as a matter of law."[7]
 {¶ 38} In line with the ruling of the Supreme Court of Ohio, I would hold that the untimeliness of Qasim's motion was not unreasonable as a matter of law where his "substantive statutory right" was ignored by the trial court at the time he entered his no contest plea.
 {¶ 39} Furthermore, as stated by the Tenth Appellate District, this independent statutory right to withdraw an improperly accepted plea takes precedence over the criminal rules of procedure:
 {¶ 40} "While Crim.R. 32.1 generally governs the withdrawal of guilty pleas, the state cites no case authority directly applying the manifest injustice standard to a motion to withdraw a guilty plea filed under R.C. 2943.031(D), and our independent research *Page 12 
has found none. Given this lack of authority, we again rely on the explicit language of R.C. 2943.031 to resolve the matter. As we notedabove, R.C. 2943.031(D)'s explicit language mandates that a trial courtset aside a judgment of conviction and allow a defendant to withdraw hisguilty plea if the defendant satisfies four requirements. Showingmanifest injustice is not included as one of the requirements. Thus, as with our refusal to impose an additional requirement that a defendant establish that he would not have otherwise pled guilty, we will not impose an additional requirement that the defendant show manifest injustice. Moreover, we point out that the General Assembly saw fit to include the language of R.C. 2943.031(F), which states that nothing in the statute prevents a court from setting aside a conviction and guilty plea pursuant to Crim.R. 32.1. This language, combined with the explicit language of R.C. 2943.031(D), persuades us that the General Assembly intended that R.C. 2943.031(D) be an independent means of withdrawing a guilty plea separate and apart from and in addition to the requirements of Crim.R. 32.1."[8]
 {¶ 41} The cases I have cited tell us that there is no requirement to find that a manifest injustice has been committed in this circumstance. In addition, I believe that courts should ensure that manifest justice should prevail wherever possible. Qasim is caught in a bureaucratic quagmire not entirely of his own making. Had the trial court told him that he was going to be deported based solely upon his plea, he would have had much more to consider than a conviction for a misdemeanor. His whole future in *Page 13 
his new country was at stake, and he did not know it. Mistakes were made, both by Qasim and the trial court. It is within the power of this court of appeals to correct them. I believe that justice requires that we take that step in this case.
[4] (Citation omitted and emphasis added.) State v. Traish (1999),133 Ohio App.3d 648, 651.
[5] (Citation omitted.) State v. Francis, 104 Ohio St.3d 490,2004-Ohio-6894, at ¶ 26-27.
[6] State v. Abi-Aazar, 149 Ohio App.3d 359, 2002-Ohio-5026, at ¶27.
[7] State v. Francis, supra, at ¶ 41.
[8] (Emphasis added.) State v. Weber (1997), 125 Ohio App.3d 120,129. *Page 1